UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA**

CASE NO. 8:21-mj-01955-CPT-1

**DE ANNA MARIE STINSON**
_____/

**DEFENDANT'S MOTION TO DISTRICT COURT FOR REVIEW OF PRETRIAL DETENTION ORDER, REQUEST FOR NEW BOND HEARING, AND/OR REQUEST FOR PRETRIAL RELEASE/BOND AND INCORPORATED MEMORANDUM OF LAW**

**COMES NOW**, A. FITZGERALD HALL, counsel for the defendant, DE ANNA MARIE STINSON, pursuant to Title 18, U.S.C. § 3145(b) and 28 U.S.C. § 636, and moves this Court to: **CONDUCT NEW DETENTION HEARING AND/OR ENTER AN ORDER OF PRETRIAL RELEASE**. As grounds for this motion, undersigned counsel proffers the following:

### BACKGROUND

1. On September 23, 2021, Ms. Stinson was arrested on a criminal complaint for the offenses of solicitation to commit a crime of violence in violation of 18 U.S.C. §373 and murder for hire in violation of 18 U.S.C. § 1958 (Doc. 1).

2. On this same date, Ms. Stinson made her initial appearance before the Court (Doc. 6). A detention hearing was conducted in this case. *Id.* In pertinent

1

part, the Government relied on the criminal complaint filed in this case and presented evidence that Ms. Stinson had committed the following acts:

    a.    Ms. Stinson had a Bitcoin/Username/Coinage account that she allegedly used and went on "the dark web" to a website and solicited someone to commit a murder-for-hire (Doc. 10, pgs. 1-5).

    b.    However, as admitted to by the Government, "although The Website offered murder-for-hire services, it never actually delivered on the promised services after receiving payment from its customers" (Doc. 10, pg. 5). In fact, the case agent admitted to this Court that this website Ms. Stinson allegedly visited, "The Website," is a scam (Doc. 17). That is to say, there was no one to hire to carryout Ms. Stinson's alleged plan to hire a hit man to do a murder-for-hire. *Id.*

    c.    In any event, law enforcement investigated these website activities and exchanges and learned that this Bitcoin/Username/Coinage account being used was assigned to Ms. Stinson (Doc. 10).

    d.    Further investigation revealed that there were approximately five Bitcoin transactions that had a combined market value, at the time, of $12,307.61 to solicit and hire a hitman to kill the victim. *Id.*, pg. 6.

    e.    As outlined in the criminal complaint, law enforcement's

investigation into this matter revealed other communications allegedly by Ms. Stinson regarding the committing of the murder for hire on the alleged victim. *Id.*, pgs. 7-12. Ms. Stinson, according to law enforcement investigations, allegedly used Bitcoin transactions (converted into U.S. dollars) on the Website in soliciting someone to commit the murder. *Id.*

    f.    It should be noted that an FBI undercover agent ("UC"), posing as a hitman, began communicating with Ms. Stinson during the investigation. *Id.*, pg. 13. According to law enforcement, Ms. Stinson allegedly continued to confirm the murder-for-hire against the victim. *Id.*, pgs. 13-14. During this impersonation as the hitman, it should be noted that the FBI UC initiated and suggested to Ms. Stinson that he would need to purchase a revolver for $350 and asked Ms. Stinson to pay for the gun. *Id.*, pg. 14. Ms. Stinson allegedly did so by using Bitcoin and further stated she still wanted the murder-for-hire completed. *Id.*

    g.    However, the case agent admitted to the Court that the FBI UC was not going to be hired to murder anyone as Ms. Stinson allegedly wanted and that such statements by the FBI UC were false to Ms. Stinson (Doc. 17).

    h.    Post-arrest, and post-*Miranda*, according to the Government, Ms. Stinson admitted to the murder for hire. An order of detention was

3

entered (Doc. 10).

3. In the detention order, the Magistrate Judge noted several of the allegations above as a basis to detain Ms. Stinson. *Id.* Interestingly, the detention order fails to note that the website allegedly visited by Ms. Stinson is <u>a fake website and a scam website</u> that will not carry out any murder-for-hires and simply takes solicitors' money. *Id. See also*, Doc. 17. Similarly, the detention order fails to note that no one, willing and able, was ever contacted by Ms. Stinson to do the alleged murder-for-hire (Doc. 10). The detention order also concluded that Ms. Stinson is a flight risk, yet it fails to state that she has no prior record, that she is in criminal history category I, that she has no record of failing to appear for court hearings, and, prior to the instant allegations, that she has been an upstanding citizen. *Id.* Notwithstanding the above, the Magistrate Judge concluded that there were no conditions, or combination of conditions, that would assure the safety of the community and that there were no conditions to assure Ms. Stinson's presence for future court proceedings. *Id.*

4. However, Ms. Stinson requests this Court reverse the order of detention. In particular, Ms. Stinson requests this Court review the facts surrounding this case and find that she is not a risk of flight nor a danger to the community. In fact, according to Ms. Stinson, evidence exists that <u>there are conditions and/or a</u>

4

<u>combination of conditions</u> to assure both her appearance at future court hearings and the protection of the public pending resolution of this case.

## STANDARD OF REVIEW

5.  Title 18, United States Code, Section 3145(b) provides for district court review of a magistrate's release or detention order. Review of the magistrate judge's decision is *de novo*. *United States v. King*, 849 F.2d 485, 489-90 (11th Cir. 1988). *Accord, United States v. Rodriguez*, 897 F. Supp. 1461, 1463 (S.D. Fla. 1995); *United States v. Allen*, 891 F. Supp. 594, 597 (S.D. Fla. 1995); and *United States v. Corzo*, 887 F. Supp. 285, 287 (S.D. Fla. 1995).

6.  "In reviewing a pretrial detention order under the Bail Reform Act, we review the district court's factual findings for clear error and the application of law to those facts *de novo*." *United States v. Clum*, 492 F. App'x 81, 84 (11th Cir. 2012) (unpublished opinion) (citing *United States v. Hurtado*, 779 F.2d 1467, 1471-72 (11th Cir. 1985)). Issues relating to a defendant's individual characteristics and the threat posed by his release are factual questions reviewed only for clear error. *Id.* The <u>district court has substantial latitude in determining whether pretrial detention is appropriate</u>. *Clum*, 492 F. App'x at 84 (emphasis added) (citing *King*, 849 F.2d 487).

5

## MEMORANDUM OF LAW

7. The Bail Reform Act of 1984 provides that a judicial officer shall order pretrial detention of a defendant if <u>no conditions</u> on the defendant's release will reasonably assure the appearance of the defendant in subsequent judicial proceedings or the safety of the community. 18 U.S.C. § 3142(e) (1986) (emphasis added).

8. Where a defendant is indicted for an offense for which a minimum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, a rebuttable presumption arises that the defendant poses both a risk of flight and a danger to the community. 18 U.S.C. § 3142(e); *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir.1990). However, a violation of 18 U.S.C. § 1958 carries a maximum sentence of ten years' incarceration. *Id.*[1] As a result, the Government is not entitled to the rebuttable presumption that pretrial detention is required for Ms. Stinson.

9. That is to say, there is no presumption that Ms. Stinson has the burden of production to come forward with evidence suggesting that she is neither a danger to the community nor a risk of flight. *King*, 849 F.2d at 488. Instead, it is the Government's burden of persuasion. *Quartermaine*, 913 F.2d at 916.

10. Thus, the Government must establish that Ms. Stinson is a danger to the

---

[1] The Government has stated to the Court that it will not be pursuing, or is abandoning, the

6

community by clear and convincing evidence or it must establish that she is a flight risk by a preponderance of the evidence. *King*, 849 F.2d at 488-89. The Government needs to demonstrate only one or the other to justify detaining the defendant pending trial. *Id.*, at 488.

    11.    Section 3142(g) of Title 18 sets forth those elements which the Court must consider when addressing the issues of a defendant's dangerousness and risk of flight:

> (1)    the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2)    the weight of the evidence against the person;
>
> (3)    the history and characteristics of the person, including—(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4)    the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

    12.    Application of the foregoing principles of law suggests reversal of the

---

offense of solicitation to commit a crime of violence. *See* Doc. 17.

magistrate judge's order of detention against Ms. Stinson and the grant of pretrial release for several reasons:

  a.  First, despite having been arrested on the instant offenses under the standard of probable cause, *see Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983); *Florida v. Royer*, 460 U.S. 491, 130 S. Ct. 1319 (1983), Ms. Stinson still enjoys the presumption of innocence for these same offenses. *See* 18 U.S.C. § 3142(j) (stating <u>nothing</u> in this section shall be construed as modifying or limiting the presumption of innocence) (emphasis added).

  b.  Additionally, the instant offense does not carry a minimum-mandatory penalty, but instead carries a maximum sentence of ten years' imprisonment. *See* 18 U.S.C. § 1958. It should be noted that Ms. Stinson is not a career offender and is not an armed career criminal, nor is she enhanceable under any applicable laws. *See e.g.*, USSG §4B1 and USSG §4B1.4.

  c.  Further, Ms. Stinson has not frequented the Court in the same manner as those who have incurred the designation of career offender, armed career criminal, or are enhanceable under various provisions of law. Here, Ms. Stinson has not achieved these distinctions, but nevertheless it is argued

8

that she remain detained. Again, Ms. Stinson has no criminal history whatsoever.

        d.      Nevertheless, here, the evidence presented by the Government only establishes that Ms. Stinson may have engaged in illegal talk or non-protected speech in her "thoughts" of the alleged victim. *See e.g.*, *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827, 1829 (1969) (providing the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violations except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S. Ct. 766, 769 (1942) (emphasis added) (providing the resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 309, 310, 60 S. Ct. 900, 906 (1940)). However, in this case, it is to be noted that during this entire episode, Ms. Stinson never touched or confronted anyone in this case (Doc. 17). In fact, Ms. Stinson never contacted the alleged victim or the victim's spouse via phone calls, text

9

messages, Instagram messages, Facebook messages, Twitter messages, or even emails according to the case agent. *Id.*

  e. In fact, despite Ms. Stinson knowing the alleged victim and the victim's spouse for years, Ms. Stinson has never gone by the couples' residence. *Id.* According to the case agent, the three have all known each other for several years and their historical interactions have always been cordial. *Id.* Thus, Mrs. Stinson argues that her alleged misconduct is no basis to detain a defendant in and of itself.

  f. When Ms. Stinson was arrested in this case, she did not resist arrest in any way such as providing a false name or date of birth. In fact, the arresting agent knew who she was. Ms. Stinson did not commit any acts of violence against any of the officers in an attempt to avoid apprehension. Furthermore, the Government failed to present any evidence that Ms. Stinson attempted to flee from police or that she was attempting to launch an attack against the officers or anyone during her arrest. The absence of such evidence clearly establishes that Ms. Stinson is not a danger to the community.

  g. It is to be noted that Ms. Stinson was not on probation, bond, or any type of early release from prison when the instant offense was

allegedly committed.

13. In short, during the detention hearing, the Government failed to establish by clear and convincing evidence that Ms. Stinson was a danger to the community. In this case, this Court should note that Ms. Stinson's prior record is outstanding and/or remarkable in that she has no prior record and she has absolutely <u>no prior failures to appear for court hearings</u>. *See* Pretrial Services/Bail Report. This results in Ms. Stinson being in the lowest criminal history category of I.

14. Additionally, Ms. Stinson presented evidence that she is not a flight risk. For example, <u>and by surprise</u>, Ms. Stinson was arrested at her residence and she did not attempt to flee from law enforcement officers during her arrest. Ms. Stinson never made any statements that if she was subsequently released from custody she would flee the United States. *See Quartermaine*, 913 F .2d at 916-917. In fact, Ms. Stinson has traveled to Hawaii, Malaysia, Hong Kong, and Germany in her adult lifetime, but she has always returned to her residence/the United States.

15. In this case, Ms. Stinson has ties to the Middle District of Florida as she has resided in the Tampa, Hillsborough County, Florida area for approximately 14 years and Ms. Stinson is a lifelong residence of the Southern District of Florida (Miami). Further, Ms. Stinson's parents, Robert and Barbara Stinson, are both

retired educators and have resided in Miami, Florida for approximately 76 years. Ms. Stinson (the defendant) also has two brothers who are lifetime residents of the Southern District of Florida. As a result, this Court should find that Ms. Stinson has [very] strong ties to this district (the Middle District, the Southern District and the State of Florida) and she is not a flight risk. *See United States v. Rivera*, 90 F. Supp.2d 1338, 1343 (S.D. Fla. 2000) (holding ties to the community is one of the indicia that courts look to in evaluating the flight risk of a defendant. The relevant community is, of course, the community in which the defendant faces prosecution) (citing 18 U.S.C. § 3142(g)(3)(A) and *United States v. Adipietro*, 773 F. Supp. 1270, 1273 (W.D.Mo. 1991)).

16. Finally, in addition to the above, there was no evidence, and the Government presented no evidence, that there were <u>no conditions or a combination of conditions</u> of release that could assure Ms. Stinson's presence at future court hearings and the protection of the public. *See* 18 U.S.C. §§ 3142(a)(1) & (2) and 3142(c).

17. In support of Ms. Stinson's pretrial release request, the following conditions are suggested for her release on reasonable conditions of bond:

    a. Reside in Hillsborough County at her residence located at 5106 Mayfair Park Courte, Tampa, Florida 33647, with and under the third-party supervision of her parents, Robert and Barbara Stinson;

      b.      The signing of a $100,000 co-signature bond by her and her parents, Robert and Barbara Stinson;

      c.      Execute a Fourth Amendment waiver for a search of her residence;

      d.      Participate in the electronic monitoring and home confinement programs unless authorized to be out of her residence by the Court or Pretrial Services;

      e.      Avoid any and all contact with the alleged victim in this case and the alleged victim's husband; and

      f.      Follow the standard conditions of pretrial release.

18. As a result of the above, the Government failed to carry its burden of persuasion that Ms. Stinson should have been detained. That is to say, the Government failed to establish by clear and convincing evidence that Ms. Stinson is a danger to the community or establish by a preponderance of the evidence that Ms. Stinson is a flight risk and, ultimately, that <u>there are no conditions or combination of conditions</u> to reasonably assure her presence at subsequent court proceedings and the protection of the public.

**WHEREFORE**, Ms. Stinson requests this Court grant a new detention hearing and/or reverse the Magistrate Judge's order of detention and enter an order of pretrial release on reasonable conditions of bail such as those suggested above.

RESPECTFULLY SUBMITTED,

A.FITZGERALD HALL, ESQ.
FEDERAL DEFENDER

*/s/ A. Fitzgerald Hall*
A. Fitzgerald Hall, Esq.
Federal Defender
Florida Bar Number 0137138
400 North Tampa Street, Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: Alec_Hall@fd.org

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished by using the CM/ECF system with the Clerk of the Court, which will send notice of the electronic filing to Office of the United States Attorney, Assistant United States Attorney Susan Huyler, on this 11th day of October 2021.

RESPECTFULLY SUBMITTED,

A. FITZGERALD HALL, ESQ.
FEDERAL DEFENDER

*/s/ A. Fitzgerald Hall*
A.Fitzgerald Hall, Esq.
Federal Defender
Florida Bar Number 0137138
400 North Tampa Street, Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: Alec_Hall@fd.org