UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 8:21-cr-343-SDM-AAS

DEANNA MARIE STINSON

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR PRETRIAL RELEASE

The United States hereby opposes Defendant DeAnna Marie Stinson's "*Motion to District Court for Review of Pretrial Detention Order, Request for New Bond Hearing, and/or Request for Pretrial Release/Bond and Incorporated Memorandum of Law*" ("defendant's Motion"). Doc. 22. For the reasons set forth below, the United States respectfully requests that the Court deny the defendant's motion.

### I.    PROCEDURAL HISTORY

1.    On September 22, 2021, the Honorable Christopher P. Tuite issued a criminal complaint against and arrest warrant for Stinson, finding probable cause that Stinson committed the crimes of solicitation to commit a crime of violence, in violation of 18 U.S.C. § 373, and murder-for-hire, in violation of 18 U.S.C. § 1958.[1] Docs. 1, 2.

---

[1] During the subsequent preliminary hearing on October 5, 2021, the United States advised the magistrate court that it did not intend to seek an indictment that included solicitation to commit a crime of violence, in violation of 18 U.S.C. § 373. *See* doc. 17.

2. The crime of murder-for-hire carries a maximum penalty of ten years. *See* 18 U.S.C. § 1958.

3. On September 23, 2021, the FBI arrested Stinson on a criminal complaint.[2] Doc. 1. On that same date, Stinson appeared before the court for an initial appearance and detention hearing. Doc. 6. The government moved for detention. *Id*. After conducting a detention hearing, the court ordered Stinson detained over defense objection. *Id*; doc. 10.

4. On September 24, 2021, the court issued its order detaining Stinson, finding that "(1) by a preponderance of the evidence that there is no condition or combination of conditions that will reasonably assure the Defendant's appearance as required; and (2) by clear and convincing evidence that there is no condition or combination of conditions that will reasonably assure the safety of any other person or the community." The court reasoned that in light of the factors enumerated in 18 U.S.C. 3142(g) and Stinson's "substantial and sustained efforts to have the victim murdered despite all that the Defendant would lose if she were caught demonstrates the magnitude of the harm—including the possible death of the victim—that could attend the Defendant's release," Stinson needed to be detained. Doc. 10.

---

[2] *United States v. De Anna Marie Stinson*, case number 8:21-mj-1955-CPT.

5.     On October 5, 2021, the court held a preliminary hearing at Stinson's request. Docs. 6, 17. After a lengthy hearing in which the government produced a witness that Stinson subsequently cross-examined, Stinson conceded on the issue of probable cause. Doc. 17. The next day, on October 6, 2021, the court issued an order finding probable cause. Doc. 21.

6.     On October 11, 2021, Stinson filed the instant motion, seeking to appellate review of the magistrate court's order of detention.

7.     On October 14, 2021, a federal grand jury returned a one count indictment, charging Stinson with murder-for-hire, in violation of 18 U.S.C. § 1958(a). Doc. 23.

## II.     MEMORANDUM OF LAW

### A.     No Release Conditions Will Reasonably Assure the Defendant's Appearance and the Community's Safety.

Under the Bail Reform Act of 1984, pretrial detention of a criminal defendant is appropriate when "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In this regard, "'a finding of either danger to the community or risk of flight . . . [is deemed] sufficient to detain the defendant pending trial.'" *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988) (emphasis in original) (quoting *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985)). The United States carries the burden of

proof, which is preponderance of the evidence with regard to risk of flight and clear and convincing evidence with regard to danger. *See United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990) (citing *King*, 849 F.2d at 489). A federal grand jury returned an indictment charging Stinson with a violation of § 1958(a). The indictment provides probable cause to believe that defendant Stinson committed the offense. *Quartermaine*, 913 F.2d at 916.

When determining whether release conditions exist that will reasonably assure a defendant's appearance as required and the safety of the community, the Court may consider: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics, including mental condition, family ties, employment, community ties, and past conduct; and (4) the seriousness of the danger to the community or to an individual. 18 U.S.C. § 3142(g). These considerations weigh against the defendant's release. Moreover, "[t]he rules concerning admissibility of evidence in criminal trials do not apply," 18 U.S.C. § 3142(f), and the parties may proceed solely by proffer. *United States v. Clum*, 492 Fed. App'x. 81, 85 (11th Cir. 2012) (citing *United States v. Gaviria*, 828 F.2d 667, 669 (11th Cir.1987)).

1. <u>Nature and Circumstances of the Offense</u>

Beginning on or about June 24, 2021, and continuing through on or about September 23, 2021, Stinson used the internet to solicit the murder of Victim 1. Specifically, Stinson created an account on a dark web website ("The Website") that purported to provide murder-for-hire services to its customers. On or about June 25, 2021, Stinson submitted an "order" requesting that a hitman be assigned to complete a "quick hit in southern Florida" to kill the spouse of Stinson's former significant other (Victim 1). In the "order", Stinson provided Victim 1's name, address, and a photograph of Victim 1. Between June and July 2021, Stinson sent four additional "orders" and over $12,000 in Bitcoin[3] to effectuate the hit. During this time, Stinson repeatedly messaged administrators of The Website and purported hitmen, requesting that the "job" be completed as soon as possible, and even offered a "bonus" if the hit was completed by a specific date. When Stinson had not received a status update from administrators of The Website, on or about July 31, 2021, Stinson requested that the administrators "reassign the job to someone who has a history of getting jobs done" because she "need[ed] th[e] job done ASAP."

---

[3] Bitcoin (also known as "BTC") is a type of virtual currency, circulated over the Internet. Bitcoin are not issued by any government, bank, or company, but rather are controlled through computer software operating via a decentralized, peer-to-peer network. Bitcoin is just one of many varieties of virtual currency.

Law enforcement agents received information regarding Stinson's criminal activity on The Website and obtained records from her virtual currency exchange account. The records showed that Stinson had paid Bitcoin to The Website. An agent contacted Stinson while acting in an undercover capacity as a hitman for The Website. In a recorded phone call, Stinson confirmed that she wanted Victim 1 killed and agreed to send additional money to the undercover agent via Bitcoin so that the transaction could not be traced. On or about September 13, 2021, Stinson sent $350 in Bitcoin to the undercover agent so that the agent could purchase a revolver to commit the murder.

2. <u>Weight of Evidence Against the Defendant</u>

The evidence against the defendant is strong. The United States has obtained records from the virtual currency exchange company that show Stinson funding her Bitcoin wallet with money from her personal and business bank accounts. The records also revealed that the virtual currency exchange account was registered to "DeAnna Stinson" at her residence in Tampa, Florida, and had been created on or about March 15, 2021 ("the Stinson Virtual Exchange Account"). The registration information for the Stinson Virtual Exchange Account also included the email address "dmariestinson@gmail.com," the date of birth, driver's license number, social security number, and phone number associated with Stinson. The exchange

service also provided a copy of Stinson's driver's license and "selfie" styled photo of Stinson that were submitted to verify the user of the Stinson Virtual Exchange Account.

The virtual currency exchange records also contained a transactional log for the Stinson Virtual Exchange Account. A review of the log revealed a transaction dated July 2, 2021, where the Stinson Virtual Exchange Account sent approximately .17743084 BTC (valued at approximately $5,983.12 on the date of the transaction) to a BTC address assigned with The Website. This transaction is consistent with the transaction reflected in The Website records provided to law enforcement agents by a confidential human source. In addition to the July 2, 2021 transaction, the log showed two additional transactions dated July 17, 2021, where the Stinson Virtual Exchange Account sent two separate payments ($100.15 and $4,595.40 respectively) to a BTC address that appears to be controlled by The Website.

Additionally, the virtual currency exchange records also contained Internet Protocol ("IP") addresses used while accessing the Stinson Virtual Exchange Account. On or about July 8, 2021, an IP address registered to Hawaii Telecom was used to purchase $5,100.00 worth of Bitcoin. Law enforcement obtained travel records from Delta Airlines showing that Stinson traveled from Tampa, Florida, to Honolulu, Hawaii, on or about July 5, 2021,

and returned on or about July 11, 2021. These travel dates correspond with the preferred dates for the kill requested in one of the "orders" placed on The Website. The IP log also revealed that on or about July 17, 2021, an IP address registered to Stinson's Tampa residence was used to purchase $325.00 worth of Bitcoin.

Moreover, the recorded phone call and text messages with the undercover agent, as well as the additional $350 payment made to the undercover, confirm Stinson's desire and intent to have Victim 1 killed. Based on all of this evidence, the FBI obtained a search warrant for Stinson's residence. During the execution of the search warrant, agents found a handwritten note in Stinson's purse that contained her unique username on The Website and apparent login credentials for her virtual currency account(s). Additionally, agents observed recent transactions with the BTC addresses associated with The Website on Stinson's cellular phone.

### 3. History and Characteristics of the Defendant

The defendant's history and characteristics generally mitigate against detention. Stinson has no criminal history, is a Florida native, and has resided in the Tampa area for the last eight years. At the time of her arrest, Stinson was gainfully employed as a chief financial officer for a local church and ran her own consulting business. According to the pretrial services report, however,

Stinson has the financial resources to flee. Given her lack of criminal history, the seriousness of the offense, and maximum exposure of up to 10 years in federal prison, Stinson certainly has incentive to flee.

### 4. Seriousness of Danger to the Community

For all the reasons outlined above, the defendant poses a serious danger to the community if released. Over a period of months, Stinson repeatedly and continuously attempted to hire a stranger on the internet to murder Victim 1. Stinson did not know that The Website would likely not fulfill its purported promise to kill and continued to pay into a significant amount of money to The Website to effectuate the hit. Perhaps the most troubling is that once Stinson spoke on the phone with an individual whom she believed to be the hitman who would kill Victim 1, Stinson doubled down and paid an additional $350 via Bitcoin to the undercover agent for the express purpose of using that money to purchase the murder weapon.

### III. CONCLUSION

Based on the crimes charged, the nature and circumstances of the offenses, the weight of the evidence, the defendant's financial resources, and the danger that she presents to the community, the defendant should be detained.

WHEREFORE, the United States respectfully requests that this Court deny the Defendant's Motion for District Court Review and/or Request for New Bond Hearing and/or Request for Pretrial Release. Doc. 22.

        Respectfully submitted,

        KARIN HOPPMANN
        Acting United States Attorney

By:   */s/ Lisa M. Thelwell*
        Lisa M. Thelwell
        Assistant United States Attorney
        Florida Bar No. 100809
        400 N. Tampa Street, Suite 3200
        Tampa, Florida 33602-4798
        Telephone:  (813) 274-6000
        Facsimile:  (813) 274-6358
        E-mail:  lisa.thelwell@usdoj.gov

U.S. v. DeAnna Stinson                         Case No. 8:21-cr-343-SDM-AAS

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel for the parties of record.

Alec Hall, Esq.

By:   */s/ Lisa M. Thelwell*
Lisa M. Thelwell
Assistant United States Attorney
Florida Bar No. 100809
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:  (813) 274-6000
Facsimile:  (813) 274-6358
E-mail:     lisa.thelwell@usdoj.gov

11