UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

     v.                        CASE NO. 8:21-cr-343-SDM-AAS

DEANNA MARIE STINSON

**UNITED STATES' SENTENCING MEMORANDUM**

The United States files this sentencing memorandum requesting a sentence at the high-end of the advisory Guidelines range and requests that this Court sentence defendant DeAnna Marie Stinson to a term of 108 months' imprisonment followed by the maximum term of supervised release.

I.     **Background**

a. **Offense Conduct**

In the summer of 2021, Stinson created an account on a dark web website ("The Website") for the purpose of hiring a hitman to kill the spouse of her former significant other. The sole purpose of The Website is to advertise murder-for-hire services.[1]

During the course of the investigation, the Federal Bureau of

---

[1] Although The Website offered murder-for-hire services, the Federal Bureau of Investigation is not aware of The Website delivering on the promised services after receiving payment from its customers.

1

Investigation accessed The Website and captured screenshots of the publicly viewable portions of The Website. The "Home" page describes The Website as the "#1 hitmen service" and states, "…If you are looking to have someone murdered, beaten, kidnapped you have arrived at the best place." Doc. 50, PSR ¶ 9. The "Prices" page specifies that users should not post the name and location of the target on the main forum "because anyone can see." Instead, it instructs users to submit an "order" and wait for a hitman to be assigned. According to The Website, murder by shooting has a minimum price of $5,000 and the average cost is $10,000. The Website instructs that after the user provides proof that the user has Bitcoin, The Website will "assign a gang member that has skills to match the requirements and budget." The "Order" page requires users to sign-in with their account username and password. Each "order" requires the name and location of the "target" and the ability to upload a photo of the "target." The "order" page also allows users to specify the manner of the murder and lists a minimum price associated with each.

The FBI obtained records associated with Stinson's account on The Website. According to the records, Stinson created an account on or about June 24, 2021. One day after creating her account, on or about June 25, 2021, Stinson placed her first "order" for hitman services, which included Victim 1's name,

address, and a photograph of Victim 1.[2] PSR ¶ 10. The order also included a description that read, "Do not do at the home.   Any place else is fine.   Need completed during July – preferably, between July 5th – 11th." *Id*. In addition to the "order" described above, Stinson placed four additional orders between on or about July 15, 2021, and on or about July 22, 2021, seeking to hire a hitman to kill Victim 1. *Id*. Like the first order, the four subsequent orders also included the name, address, and a photograph of Victim 1. *Id*. The orders included the following descriptions:

1)  **July 15, 2021 - Order #2**. Description: "Do not do at the home. Any place else is fine. Need completed during July. Bonus if completed by July 31st"

2)  **July 17, 2021 - Order #3**. Description: "Do you have a preferred escrow service? I am ready proceed. Can we get this done by month end?"

3)  **July 17, 2021 - Order #4**. Description: Do you have a preferred escrow service? I am ready to proceed. Can we get this done by month end? The escrow account is set up on Coinsavr.[3] Please advise as to your Username."

4)  **July 22, 2021 - Order #5**. Description: "Do not do at the home. Any place else is fine. Need completed during July. Bonus if completed by July 31st"

---

[2] Paragraph 10 of the PSR inaccurately describes the first "order" as occurring on July 25, 2021.

[3] According to its website, Coinsavr is a Bitcoin escrow service that allows users to hold BTC in escrow until a task is complete and releases the BTC when the user is satisfied with the transaction.

PSR ¶ 10. In total, Stinson paid The Website approximately $12,307.61 in Bitcoin to solicit and hire a hitman to kill Victim 1. *Id.*

In addition to placing multiple "orders", Stinson continuously reached out to the administrator of The Website and the purported hitmen to follow up on the status of her requests. PSR ¶¶ 12, 13. On or about July 31, 2021, Stinson requested that the "job" be reassigned "to someone who has a history of getting jobs done." PSR ¶ 12.

On or about August 27, 2021, Stinson communicated via text message with an undercover FBI agent purporting to be a hitman from The Website. PSR ¶ 14. Stinson confirmed the identity of Victim 1 via a photograph, indicating Victim 1 was the person she sought to have killed. *Id.* A few days later, on or about September 1, 2021, Stinson spoke with the undercover agent on the phone. The call was recorded. In the phone call, the undercover agent explained that he would need to purchase a gun to commit the murder and that it would cost Stinson an extra $350 to be sent via Western Union. PSR ¶ 14. Stinson agreed to pay the money but stated, "I can't send you Western Union, I don't want it traced." *Id.* Stinson then paid the undercover agent the money for the gun via Bitcoin and was ultimately arrested.

### b. Procedural History

On September 22, 2021, Stinson was arrested on a criminal complaint for

4

murder-for-hire, in violation of 18 U.S.C. § 1958, and solicitation to commit a crime of violence, in violation of 18 U.S.C. § 373. Doc. 1. On September 23, 2021, Stinson appeared for her initial appearance. Doc. 6. The court denied Stinson's request to be released on bond. Docs. 6, 10. United States Magistrate Judge Christopher P. Tuite found that there were no conditions or combination of conditions that would reasonably assure the safety of the community. Doc. 18 at 4. Specifically, the court reasoned that Stinson had engaged in "substantial and sustained efforts to have the victim murdered despite all that the Defendant would lose if she were caught demonstrates the magnitude of the harm— including the possible death of the victim." *Id*. at 4. The court noted that this behavior coupled with Stinson's "sufficient financial resources to flee if she were so inclined" required her detention pending the resolution of her case. *Id*. at 32-4.

On October 13, 2021, a federal grand jury returned a one-count indictment charging Stinson with murder-for-hire, in violation of 18 U.S.C. § 1958. Doc. 23.

On January 19, 2022, Stinson pleaded guilty to the indictment. Docs. 39, 42. The Court adjudicated her guilty on February 3, 2022. Doc. 46. Stinson's sentencing is scheduled for April 20, 2022. *Id*.

5

## II.     Presentence Investigation Report

On April 11, 2022, probation issued its Final Presentence Investigation Report ("PSR") as to the defendant. Doc. 50. Pursuant to the PSR, Stinson's applicable Guidelines range for the underlying offense is 87 months to 108 months; she has a criminal history category of I; and the applicable period of supervised release is not more than three years. *Id.* at ¶¶ 70, 73. Defense counsel has one remaining objection to the information stated in the PSR. *Id.* at 21.

## III.     Argument for High-End Guidelines Sentence

The facts of this case and the defendant's conduct are egregious and demand a sentence at the high-end of the applicable Guidelines range. A sentence of 108 months' imprisonment followed by 3 years' supervised release is necessary due to the nature and circumstances of the offense, to promote respect for the law, provide just punishment for the offense, afford adequate deterrence of these crimes, and for the protection of the public against the defendant. *See* 18 U.S.C. § 3553(a). The United States recognizes that a sentencing court may not presume that a sentence within the advisory guideline range is reasonable; however, the Guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. §

3553(a), explaining any variance from the former with reference to the latter."
*Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Section 3553(a)(1) provides
that, in determining a sentence, courts must consider the nature and
circumstances of the offense, as well as the history and characteristics of the
defendant. Additional factors outlined in § 3553(a)(2) include the need for the
sentence to reflect the seriousness of the offense; to promote respect for the law;
to provide just punishment for the offense; to afford adequate deterrence to
criminal conduct; to protect the public from further crimes of the defendant; and
to provide the defendant with needed education or vocational training, medical
care, or other corrective treatment in the most effective manner. 18 U.S.C. §
3553(a)(2). A consideration of these factors warrants a sentence at the high-end
Guidelines range.

### a. Nature and Circumstances of the Offense

As outlined above, the nature and circumstances of the offense show that
Stinson was unrelenting in her efforts to have Victim 1 murdered. This is not an
instance of a poor decision in the heat of the moment. For 10 weeks, Stinson
consistently took steps to hire a third party to kill another human being. Stinson
was unfazed by the delay of the purported hitmen to act on her requests and
persistently sought to have Victim 1 killed. Undeterred, Stinson doubled down
and offered bonus money to "get [the] job done." Stinson had no idea that The

Website she had contracted with to kill Victim 1 was essentially a scam—taking her money with no real plan to execute Victim 1. To the contrary, Stinson truly believed The Website's advertisements as being the dark web's "#1 hitmen service"—so much so that she placed multiple orders and paid over $12,000 to fulfill her murderous plot.

Moreover, Stinson's conduct demonstrates that she intentionally and strategically engaged in a course of conduct designed to effectuate the real life killing of Victim 1 while Stinson attempted to insulate herself from culpability. Stinson intentionally sought to conceal her criminal acts by using the dark web and cryptocurrency to remain anonymous. Stinson even went as far to establish an alibi by traveling to Hawaii during the time frame she had requested that the murder take place. The nature and circumstances of the offense dictate the need for a high-end Guidelines sentence.

### b. History and Characteristics of the Defendant

There is nothing in Stinson's background to explain her abhorrent criminal conduct in this case. She was reared in South Florida in a loving home by her mother and father, who have referred to Stinson as the "golden child." She has no prior criminal history. Stinson does not suffer from any mental health or substance abuse concerns. She is a certified public accountant and an active member of her church where she served as the chief financial officer. By

all accounts, Stinson led a productive and successful life up until her arrest. These facts, however, do not mitigate the need against a high-end Guidelines sentence. The fact that Stinson was willing to risk her freedom and livelihood to solicit the murder of an innocent person is beyond troubling. Stinson's sentence should reflect the seriousness of her criminality.

### c. Need to Promote Respect for the Law and Need for Just Punishment

Stinson demonstrated a callous disregard for human life when she went on a crusade to hire a hitman to kill her ex-boyfriend's wife. For months, Stinson plotted and actively tried to facilitate the murder of Victim 1. It is by pure chance that Stinson chose to use The Website, which later turned out to be a financial scam, to effectuate her plot to kill. While The Website's hitman services were fake, Stinson's plan and desire to have Victim 1 kill were not. Stinson's intent is demonstrated in her repeated "orders" and payments to The Website, communication with The Website administrators and purported hitmen, and in her recorded conversation to an undercover FBI agent claiming to be the hitman. In fact, when the undercover agent asked Stinson if she was sure she wanted to go through with ordering the hit Stinson said "yes." In all these communications, Stinson expressed her honest and true desire to have

Victim 1 killed and demonstrated the lengths at which she was willing to go to have the job done.

### d. Need to Afford Adequate Deterrence and for the Protection of the Public Against the Defendant

Stinson persistently sought kill Victim 1 while hiding behind the perceived anonymity of the dark web and cryptocurrency. Her conduct is abhorrent. There is a strong need to impose a severe sentence that will serve as a warning to Stinson and individuals considering similar conduct. A lengthy sentence will deter comparable activities and convey that such behavior is unacceptable and will be adjudicated harshly within the Eleventh Circuit. Stinson has shown a brazen disregard for human life and has volunteered to illustrate the repercussions for behavior a civilized society deems unacceptable.

### IV. <u>Conclusion</u>

Stinson's sentence should fairly account for seriousness of the offense and the scope of Stinson's criminal endeavors, acknowledge the harm that she has caused to the victim, and acknowledge the ramifications of her actions. For the aforementioned reasons, the United States respectfully requests that this Court issue the only reasonable sentence for the defendant—108 months'

imprisonment followed by 3 years supervised release.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:     */s/ Lisa M. Thelwell*
        Lisa M. Thelwell
        Assistant United States Attorney
        Florida Bar No. 100809
        400 N. Tampa Street, Suite 3200
        Tampa, Florida 33602-4798
        Telephone:   (813) 274-6000
        Facsimile:   (813) 274-6358
        E-mail:        lisa.thelwell@usdoj.gov

11

**U.S. v. Stinson**                    **Case No. 8:21-cr-343-SDM-AAS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 15, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Alec F. Hall, Federal Defender

*/s/ Lisa M. Thelwell*
Lisa M. Thelwell
Assistant United States Attorney
Florida Bar No. 100809
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:   (813) 274-6358
E-mail:       lisa.thelwell@usdoj.gov
