UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                   Case No. 8:21-cr-00343-SDM-AAS

DE ANNA MARIE STINSON

**UNITED STATES' MOTION FOR REIMBURSEMENT OF LEGAL FEES
UNDER THE CRIMINAL JUSTICE ACT**

The United States requests pursuant to 18 U.S.C. § 3006A(f) an order

directing defendant De Anna Marie Stinson to reimburse the Treasury for the cost of

her legal representation, and further requests that her legal fees are paid in part by

turnover of seized funds held by the Federal Bureau of Investigation and the Clerk of

Court.

**MEMORANDUM OF LAW**

I.      **Background**

Stinson pleaded guilty without a plea agreement on or about January 19,

2022, to one count of murder-for-hire, in violation of 18 U.S.C. § 1958, and was

sentenced on April 20, 2022. Docs. 39, 42 and 62. Throughout the case, Stinson was

represented by the Federal Public Defender's Office (FPD). Stinson previously

disclosed assets to Pre-Trial Services on September 23, 2021. Doc. 60 at ¶ 67.[1] At

sentencing, Stinson's counsel confirmed that she still had the assets identified in the

---

[1] However, Stinson did not report any assets or liabilities to the PSR writer other
than the balance in her commissary account.  Doc. 60 at ¶ 66.

PSR. Doc. 60 at ¶¶ 66-70. Specifically, the PSR listed the following assets that Stinson previously disclosed:

1.  $25,000 in a savings account;

2.  $7,000 in a checking account;

3.  $100,000 in stocks, bonds, and IRA accounts;

4.  the real property located at 5316 Bradbury Court, Tampa, Florida with an estimated value of $250,000;

5.  the real property located at 2020 Continental Ave, Apt. 212, Tallahassee, Florida with an estimated value of $79,400; and

6.  Her residence in Tampa, Florida with an estimated value of $423,000.

Doc. 60 at ¶ 67 and p. 2.[2]

Leon and Hillsborough County Public records show that the Defendant is the co-owner of 2020 Continental Ave, Tallahassee, Florida, and the sole owner of both 5316 Bradbury Court (a rental property from which she derives rental income)[3] and 5106 Mayfair Park Court (her primary residence) in Tampa, Florida. *See* Composite Exhibit A.

---

[2] Because Stinson did not fully complete the assets and liabilities form for the PSR writer, we do not have current mortgage balances for the properties. The PSR estimated that in total, Stinson owes $354,784 in real estate mortgage loans. Doc. 60 at ¶ 69.

[3] Stinson reported that she is the co-owner of this property, however, the Hillsborough County Official Records identify Stinson as the sole owner. Composite Exhibit A.

2

II.     **Legal Memorandum**

    A.     **Stinson has Assets Available to Reimburse the Cost of Her Representation.**

The Criminal Justice Act requires district courts to provide legal counsel for criminal defendants charged with a felony when they are unable to pay for an attorney. 18 U.S.C. § 3006A(a)(1)(A). Yet, the plain language of the CJA authorizes the court to order repayment of court-appointed attorney fees and expenses if it finds that the defendant is financially able to pay such fees. 18 U.S.C. § 3006A(f) (When the court finds that funds are available for payment from a person furnished representation, it may direct that such funds be paid to the court for deposit in the Treasury as a reimbursement). Section 3006A(f) is not limited in time. Rather, the CJA's reimbursement provision is extremely broad, permitting a court to require payment of CJA-funded defense costs "*[w]henever* … the court finds that funds are available for payment from or on behalf of a person furnished representation." 18 U.S.C. § 3006A(f) (emphasis added).

That said, this Court should first "make an 'appropriate inquiry' as to the availability of the funds for payment as required under subsection (f)." *United States v. Homrighausen*, 366 F. App'x 76, 77 (11th Cir. 2010) (citing *United States v. Bursey*, 515 F.2d 1228, 1236, 1238 (5th Cir. 1975)). In *United States v. Moore*, the Fourth Circuit found that the court should base its determination on a finding that "there are specific funds, assets, or asset streams (or the fixed right to those funds, assets or asset streams) that are (1) identified by the court and (2) available to the defendant

3

for the repayment of the court-appointed attorneys' fees." 666 F.3d 313, 322 (4th Cir. 2012).

Stinson does indeed have specific funds and assets available to her to pay her legal fees, and therefore, she should reimburse the Treasury for the cost of her representation in this case. Stinson has the ability to reimburse the costs of her representation with her savings and investments accounts alone ($125,000).

Notably, requiring her to use these funds to reimburse the government for her attorney's fees still leaves her with significant wealth. Stinson also owns three real properties. She solely owns her primary residence and an investment property in Tampa, and she is the co-owner of a second investment property in Tallahassee, Florida. While Stinson declined to provide further details on her assets and liabilities, just based on the limited information she previously provided to Pre-Trial Services, she has specific assets available to reimburse the government for her legal representation. Doc. 60 at ¶¶ 66-70.

**B.      The Court Determines Amount of Legal Fees to be Reimbursed**

Courts have taken different approaches in determining what amount should be reimbursed to the Treasury. In *United States v. Joseph Konrad*, the Third Circuit affirmed the district court's order that the defendant reimburse the government $6,000 for the cost of his representation. 730 F.3d 343, 351 (3rd Cir. 2013). The *Konrad* opinion is persuasive because it addresses facts similar to this case and applied the same provision of the CJA as to reimbursement to the Treasury. Like Stinson, Konrad had assets that existed at the time the FPD's office began

4

representation. Specifically, Konrad had $6,007 in individually held accounts and $34,893 in a money market account held jointly with his wife. *Id.* at 349. After finding that Konrad had the ability to reimburse his fees, the court analyzed the meaning of the phrase, "reimburse" as used in the CJA. *Id.* at 351.

Konrad argued that his reimbursement should be limited to the hourly rate of court-appointed counsel, but the court disagreed. *Id.* at 351-352. In its reasoning, the *Konrad* court found that "reimbursement to the appropriation" meant repayment to the institution that expended funds for representation in the amount of the benefit to the ineligible defendant. *Id.* at 351. The court stated that, "[w]hen a defendant is able to pay for the costs of a private attorney, he is not entitled to gratuitous or subsidized legal counsel under the CJA." *Id.* (citing *United States v. Wilson*, 597 F.3d 353, 357 (6th Cir. 2010) ("What the Act gives with one hand to a criminal defendant 'financially unable' to pay for legal services it takes away with the other if the defendant turns out to be 'financially able' to obtain counsel."))

The court also considered that other district courts found reimbursement is not limited to the discounted CJA rate, but instead is based on the reasonable market rate for a private attorney in the area. *Id.* (citing *United States v. Anderson*, 400 F. Supp. 3d 32, 37 (D.D.C. 2005) (ordering reimbursement for "the time expended in this case at a reasonable hourly rate (not limited to $90 per hour)"); *United States v. Nunez Garcia*, 879 F. Supp. 63, 67 (W.D. Tex. 1995) (finding the court "is not limited by the hourly rates stated in § 3006A(d)(1)"); *United States v. Coniam*, 574 F. Supp. 615, 618-619 (D. Conn. 1983) ("There is no explicit limit on the amount of such

funds to the panel attorney rates…."); cf. *United States v. Lefkowitz,* 125 F.3d 608, 621 (8th Cir.1997) (ordering defendant to reimburse $316,693.70, greatly exceeding the maximum under 18 U.S.C. § 3006A(d)(2)). The court affirmed the appointed Master's decision, based on the lowest estimate submitted by private attorneys, that the defendant's representation cost $6,000. *Id.*

In *Coniam*, the District of Connecticut upheld the magistrate judge's order that Coniam must reimburse the government for the work performed by his FPD at the rate of $75 per hour, but also ordered the FPD's office to provide to the court, "(a) The total annual cost of the services of the public defender, including all expenses in his support, prorated in the case of any expense allocable to other attorneys; [and] (b) The approximate number of hours that are anticipated as required for the representation of defendant." 574 F. Supp. at 618-619 (D. Conn. 1983). The court stated that the additional information to be provided by the public defender would aid the court in its duty to ascertain the full cost of the representation and ensure that the amount Coniam had been ordered to pay covers the full cost of his representation. *Id.* at 619.

### C.    Turnover of Funds Already in Possession of the Federal Bureau of Investigation

As part of her underlying offense, Stinson transferred bitcoin to the undercover agent that she hired. Those funds were seized and retained for evidentiary purposes. The bitcoin were liquidated into $473.41 on or about October 19, 2021; the funds are in the possession of the Federal Bureau of Investigation (FBI).

Upon entry of an order directing Stinson to reimburse the Treasury for the costs of her representation, the United States requests that the Court direct the FBI to turn over the seized funds to the Clerk be paid toward Stinson's legal fees.

### D.    Funds Held by the Clerk of Court

Additionally, Stinson made a prejudgment restitution payment of $12,851.18. At sentencing, the Court ordered Stinson to pay $12,503.70 for her special assessment and restitution. Thus, the Clerk advised that it is holding an overpayment of $347.48. Upon entry of an order directing Stinson to reimburse the Treasury for the costs of her representation, the United States requests that the Court also direct the Clerk to pay the overpayment and the funds turned over by the FBI to the Treasury as reimbursement for her legal fees.

### III.   Conclusion

Based on the foregoing, the United States requests a finding under 18 U.S.C. § 3006A(f) that the Defendant has funds available to pay of her legal fees, determine the cost of her legal fees, and enter an order directing that the funds held by the FBI be turned over to the Clerk, and that the Clerk send the overpayment of $347.48 and funds turned over by the FBI to the Treasury to be applied to her total ordered reimbursement. Stinson should then be ordered to pay the balance of her legal fees within 30 days of this Court's order.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:   *s/ Julie A. Simonsen*
JULIE A. SIMONSEN
Assistant United States Attorney
Florida Bar No. 70647
Financial Litigation Unit/cll
400 North Tampa Street, Suite 3200
Tampa, FL 33602
Telephone:   (813) 274-6048
Facsimile:    (813) 274-6247
E-Mail: FLUDocket.mailbox@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on May 11, 2022, I electronically filed the foregoing with the

Clerk of Court by using the CM/ECF system, which will send a notice of electronic

filing to the following:

Alec F. Hall, Federal Defender


*s/ Julie A. Simonsen*
JULIE A. SIMONSEN
Assistant United States Attorney